Good afternoon, Charles Brower, appearing for the plaintiff in this matter, the appellant. Our position is that the district court judge did not view the facts in the light most favorable to the plaintiff in granting summary judgment in this case. The court concluded that Mr. Pfendler was not a qualified individual because he could not perform the essential functions of his job with or without accommodation. Let me ask you a very simple question about that part of the decision. Is that the only basis for the district court's decision? In other words, the determination that your client couldn't perform the essential functions of the job? My understanding is that was the major reason the judge … Well, that wasn't what I asked. Was it the only basis of the decision? In other words, is that the only issue in front of us, or are some other issues in front of us? Well, there are other issues. There are other issues. Well, to put it differently, could we affirm the district court's judgment even if we thought that lifting more than 50 pounds was not an essential job function? Well, I don't think the court should affirm it, if that's the … No, I guess I — of course you don't. Let me be more precise in my questioning. There were lots of grounds argued for summary judgment below. You agree? Yes. Okay. I want to — the first question I asked you was, as I understood the record, the district court focused only on one of them in granting summary judgment to your opponent, which was the essential job function requirement. Is that right? That is correct. Okay. So that's the only issue on which the district court based its decision. Correct. We might, in our discretion, if we thought that was wrong, move on to other things that were briefed below, but the district court didn't address those. That's correct. Okay. Sorry. We misunderstood each other. I mean, the judge in her decision stated that there was undisputed evidence that lifting more than 50 pounds was an essential function of the DTS job. Now, with regard to that, a review of the record clearly shows that the evidence did not show that it was undisputed. Okay? That's something clearly that the plaintiff disputed with regard to the restriction in lifting. The only evidence — With what evidence? What did he bring forward to dispute that, the plaintiff? His testimony. He said, no, you don't — job doesn't require 50 pounds of lifting? Is that what you mean? He said it does not require more than 50 pounds, and his last restriction was 50 pounds. Well, but that's — what level of evidence is he required to bring forward to create a material issue of fact? It's not enough if he simply says, no, that's not my opinion. My opinion is lifting 50 pounds is enough. So what's the specific evidence in the record that created the fact issue that you think exists here? Well, I'd like to look at it from the other perspective. What evidence did they bring forward to show the judge that he couldn't — Well, no, but here — we're not dealing with burden shifting here, I don't think. We're dealing — after all, their job description says must lift more than 70 pounds, 90 pounds. Job restriction says 75 — So the question is — so the question is, what evidence did you produce that creates a material issue of fact as to that? I think I know what it was, but it's not simply enough to say what did they come forward with. You had the burden here. What did you come forward with? With the testimony of the plaintiff, who's an experienced — Wasn't there another technician who gave testimony on that issue? There was only one deposition taken. Wasn't there a declaration from another technician who said that routinely we don't have to lift more than this? Sometimes we have to tip something over, but we — it's not really a normal part of the job? That is in the record. I don't think it was a declaration. I think it may have been part of — It was a statement to an investigator. Yes, that's right. So the question is whether or not that was admissible. Well, let me interject. I may be able to be helpful here. As I read the district court's order, the district court does not understand the evidence that was presented to her. I'm on page 19 of her orders. It's excerpts 38. The district court writes, Plaintiff testified that the position required lifting more than 50 pounds. Plaintiff testified that it had to reposition and lift up dialysis recliners that were somewhere between 35 and 70 pounds, and the plaintiff stated the dialysis machines were more than 50 pounds, maybe more than 100 pounds. He never testified that he had to, quote, lift them up. That's correct. The only testimony he gave was we had to tip them. Well, tipping something that has wheels on it, which he says they have, that weighs 100 pounds, is very different from lifting something that weighs 100 pounds. And I think the district judge, she just misread the deposition. I agree with you 100 percent. In the story. I agree with you 100 percent. Yes. Mr. Cole did a good job asking, okay, okay, how much does this weigh? A pallet of these supplies, 1,000 pounds. Well, obviously, my client doesn't lift 1,000 pounds, so it was something else where it was 50 pounds. The dialysis chair, yes, more than 100, but my client testified, but I don't lift the chairs. I tip them over. Yeah, sure. So, I think the judge, I mean, I reviewed the record a number of times to come here to argue. In my view, there's nothing in the record that supports that finding, that there was evidence of more than 50 pounds. Well, but assume there was, because what we're looking here, you're not saying she should have granted summary judgment to your client. No. Okay. She should have let us go to trial. Right. So, I guess my first question is, and put aside what the other technician said, can the job be described by the employee, by the plaintiff employee? In other words, he says, well, I didn't really have to lift more than that. I understand that the district judge may have had the facts wrong, but I'm asking a legal question. Is it enough to create an issue of fact if the employee says, no, no, that wasn't a routine requirement of my job? Yes, I believe so, and then the burden shifts to the defendant to bring in someone. I mean, all they put in was the written job description, which case law says is only evidence. But it's evidence. We're at the summary judgment stage. That's enough. It's evidence. They have evidence. I'm just trying to figure out whether your evidence was sufficient to create the fact issue, and my question, I think the answer is yes, but I want to be sure about it. Can the employee himself say, create a fact issue by saying, no, no, that's not true, it's really not what my job requires? Well, I don't see why not. I mean, he was there for six years. He had been elevated to the chief technician at some point, so he certainly would know clearly what the job, the essential functions and the lifting restrictions actually is or are in his job. So I think clearly he is able to raise that as an issue, and then if they want to bring in someone that disputes it, which they didn't do, they didn't bring in anybody to discuss what the actual lifting, other than trying to make it look like there's heavy things around that Mr. Fendler would have to lift, which obviously he didn't have to lift. But clearly, in our position, there was a question of fact here as to that issue. Okay. But you're down to two minutes or so. I'd like to reserve that. Let's hear from the other side, and then you'll save some time. All right, thank you. Good afternoon, and may it please the Court. Christopher Cole on behalf of Appley Liberty Dialysis Hawaii LLC. And to answer Judge Hurwitz's first question, I believe that the district court decided primarily on the second prong of the three-part prima facie case, which is, was Mr. Fendler, the appellant, qualified? Right. And she said he wasn't because he couldn't lift a certain number of pounds. Correct. And the question is whether that is a mandatory job requirement, if you will, not something that might be nice to have and occasionally happens, but at the core of the job. And he had a lot of experience and said, I worked at the job a long time and I hardly ever had to do that. He may be able to impeach the heck out of him. He has some prior inconsistent statements. But why isn't that enough to get past summary judgment? Well, I understand that was the rubric within which she made her conclusions. But within that discussion, she also addressed whether or not liberty dialysis reasonably accommodated Mr. Fendler. And that was one of the arguments that we made. We didn't make an argument based on the qualified prong. We didn't make that argument. Do you think that's what I was asking your colleague about? I'm not sure I can read her summary judgment order as finding that even if he was a qualified individual, you made a reasonable accommodation. Point me to where she says that in the order. In the supplemental excerpts of record, I guess, is where the entire order was laid out. Right. Under the rubric of the second prong, which, again, we didn't move on. We moved on the other two prongs. I understand. But it's the one that she's discussing. I get it. She said first that lifting more than one page. What page are you on? I'm on page, sorry. Excerpts of record. Five? Five. Say it again. I'm sure you'll get interrupted. Excerpts of record 35. 35. Got you. Okay. That's the first section where she addresses the point that Your Honors are focusing upon. Right. Okay. And she goes on at some length to discuss the evidence. Yep. In the second section, which is on excerpts 39. Okay. The district court goes on to say that reasonable accommodation was provided. And the undisputed evidence in this record and our argument on appeal is that there's a basis to affirm because, after all, this case is only about whether or not we provided whether or not the appellee provided a reasonable accommodation. And as a matter of law, the record is clear that the Well, is that right? I mean, she says you gave him a reasonable accommodation because you gave him medical leave. Right? Yes. Well, not only that, but then later Then he later transferred to another job. Correct. That other job paid less than the one before. Correct. But it was voluntary. He could have waited. He was basically saying that I couldn't do the job even without any accommodation other than taking away essential job functions. The essential job function isn't 50 pounds or more. The essential job function, after all, is to actually lift. And by the way, the judge Separate the two because you got me interested in the second one. No, I think So let's assume that he could perform the 70 pounds or more was not an essential job function. 50 pounds or more was Well, the judge ruled that at a minimum the record reflected that the weights that he had to carry around as part of I'm sorry. Let's assume she was wrong about that. Assume she was wrong. Let's assume that 50 pounds was the essential job function. In December, he was ready to lift 50 pounds and return to this job. Did you thereafter, did he get a reasonable accommodation? How does the reasonable accommodation work? According to his version, if that's true, then did he need a reasonable accommodation? No. No, but you wouldn't let him return to the job, would you? Okay. Well, then he should have pled a case based on that. He pled a case based on failure to accommodate. He didn't plead a case that I was discriminated against because unlike other people who were not disabled, when I could lift 50 pounds, I was allowed to go back to I was not allowed to go back to work. But some John Smith who was not disabled but temporarily couldn't lift 50 pounds was allowed to go back to work or could only lift up to 50 pounds. That claim was never pled. That was our point. And in our answering brief. And there was no reply brief filed in this case. But, you know, really the way this case should be framed is what was alleged, what was conceded or admitted in the record below, what has been waived on appeal. What was alleged in this case was a failure to accommodate and only a failure to accommodate plus retaliation. The retaliation claim has been It's now been abandoned. appealed. Failure to accommodate is a specific and distinct legal theory. OK, if his theory is true, then by the time December rolls around and it's one week before Christmas, he's saying, I can do the job. I don't need an accommodation. But because of this job description that was only relevant, we thought, to the failure to accommodate claim because you can't adjust job duties that are essential. That's why it's part of the record. He's saying, I don't need an accommodation. Let me come back to work. Well, where's the discrimination at that point? OK, let's assume they didn't let him come back to work. But what I'm having difficulty with is this. Your client is saying at that point, we're not letting you come back to work because you can't perform the essential job functions. Correct. And he says, but yes, I can. There's a disagreement that we don't think is material, but we don't think you need to get to that point because that's not a failure to accommodate. That's something else that wasn't part of this case. It was not part of this case in the complaint. In the answers to interrogatories, he said it was part of his failure to accommodate claim. At the hearing in the district court below, he said, well, that was actually part of the retaliation claim. And that's in excerpts of record 15, which is the docket where the district court notes that at the oral argument at the hearing, the appellant, Victor Fendler, changed the theory of his case from, I was retaliated against because they gave me a job but at a different location. He withdrew that claim. And instead, he substituted the claim that it was discriminatory or retaliatory because they didn't let me back to work even though I could do the job without an accommodation. What do you suppose the district judge would have done had she read the deposition properly and had she understood that the deposition testimony by the plaintiff was, I didn't ever have to lift those chairs. All I had to do was tip them, and I never had to lift more than 50 pounds. What would she have done had she understood that? I think perhaps she would have, you know, she would have ruled in my favor on the other arguments I raised, the only two other arguments I raised on no disability, which is part of this appeal, you know, could be an alternate grounds for affirming, and gave him an accommodation. Gave him two accommodations that this court has said, you know, employers, you've got to do that. And I think in this case, you have an employer who's entitled to some amount of deference and discretion because they never fired Mr. Fendler. They gave him a leave of absence. In Dark v. Curry, this court said that's what employers should do, and the interactive process was ongoing. He voluntarily applied for the job. He could have just stayed as a DTS or a dialysis technical specialist and waited in that job until he recovered or had surgery, and then gone back to his job. So it was truly voluntary. It's not a constructive demotion. Yes, it's a lesser job, but it was his call. It was his decision. It was voluntary. So the interactive process is ongoing. There's no reason to penalize an employer who's doing what this court and other courts across the country have told employers to do under the ADA. Engage in the interactive process. Identify possible solutions. Hey, you know, maybe you ought to think about a job that you can. No, but see, the problem is you're arguing a case that the district court didn't decide, right? Well, I argue, yeah. Well, right, right. You know, district court said what? He's not qualified because he can't lift more than 50 pounds, right? Isn't that essentially the basis of the district court's decision? The district court held that, and I also addressed the retaliation claim, addressed all the claims before her. It's an argument that I didn't make, but also addressed some of the arguments I did make in the context of addressing the qualified prong. Namely, we provided an accommodation, two accommodations, and the court says that, and that it was voluntary for him to apply for that position, and that he never reapplied, revisited it. So this is an ongoing process. He also said after he got that job that he applied for voluntarily that he was happy in that job. So it was successful, and he never revisited it, and those are all undisputed facts. There's a number of undisputed facts in this case that give this court a basis to affirm. Even if the court made a harmless error, which I don't agree with because, among other things, he asserted in his TEI application that the equipment he had to weigh was more than 75 pounds. You can't contradict something that's a purely factual matter under this court's decision in Smith and the Cleveland decision by the U.S. Supreme Court. So I see I have one second. I ask your honors to affirm. Thank you. Thank you. Mr. Morrow, you've got a couple of minutes. Okay, thank you. Okay, well, the record shows that in this case my client did have the lifting restriction at the beginning of 2012. He got better and better over time, and by at least December he felt he could go back and do his DTS work. Now, they told him, you're not coming back to work unless you have no restrictions. Well, why don't you respond to Mr. Cole's argument that the only claim you really plead in the complaint is the failure to accommodate, right? Yes. Well, that's the complaint we're raising. That's the only claim that's in the complaint, right? That's correct. All these other claims you're arguing you've never alleged. I'm sorry? You never alleged these other claims. Well, we're saying that the reasonable accommodation would have been to allow my client to go back to the DTS job. Well, but if in your view lifting more than 50 pounds wasn't an essential job function, he didn't need an accommodation, did he? No, but they said he had to lift 75 to 100. That was their position. Well, but that's a claim for disability discrimination, isn't it? That's a claim that you're, assuming he's disabled, that you're discriminating against him because he's disabled, not because you're failing to accommodate. So the question, your colleague, as I understand it, maybe I'm misstating his argument, says you didn't make a disability discrimination claim. You made a failure to accommodate claim. And that failure, and since everybody agrees you were accommodated through December, at that point perhaps you could have made a disability discrimination claim, but under your theory of the case not a failure to accommodate claim. Well, they accommodated him through December, but then they didn't accommodate him after that. They didn't bring him back to work. They went through an interactive process, but they were not considering the fact that he didn't really have to do the 75 to 100 lifting restriction. And then they offered him another job, which he didn't really want to take, but by that time his TDI had run out, his personal leave had run out. Maybe one way to look at it is his argument is that the employer failed to accommodate by waiving the technical, but in fact non-applied restriction of 75 to 100. That's the perfect way to put it. I'll send you my book. Yeah, because you said his bill will be in the mail. All right, thank you. Appreciate it. Thank you very much. Thank you both sides for their arguments. Fendler v. Liberty Dialysis, Hawaii, submitted for decision.
judges: Tashima, W. Fletcher, Hurwitz